UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW CAPELOUTO, STOP DRUG HOMICIDE,<br><br>Plaintiffs,<br><br>v.<br><br>GLEN MUSE, an individual; TEXAS PICTURES dba TEXAS PICTURES DOCUMENTARIES, a corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:25-cv-01594-HDV-RAO<br><br>**ORDER RE DEFENDANTS' SPECIAL MOTION TO STRIKE UNDER CAL. CODE CIV. PROC. § 425.16 AND MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) [37]** |

## I. INTRODUCTION

This case arises from a broader controversy surrounding Plaintiff Matthew Capelouto's nonprofit advocacy work and the internal conflicts that developed. According to the Complaint, Defendants Glen Muse and Texas Pictures produced and disseminated a multi-part video series containing false and defamatory statements that Capelouto misappropriated nonprofit donations. *See generally* Complaint [Dkt. 1].

Before the Court is Defendants' Special Motion to Strike Plaintiffs' Complaint under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16, or in the alternative to dismiss under Rule 12(b)(6) (the "Motion). [Dkt. 37]. Defendants argue that the lawsuit targets speech made in a public forum on issues of public interest and fails to state a claim for either defamation or tortious interference with business contracts. Having carefully reviewed the parties' submissions and the applicable law, the Court concludes that Plaintiffs have sufficiently alleged a plausible claim for defamation to defeat an anti-SLAPP motion. Defendants' Motion to Strike is therefore denied. However, the Court also finds that Plaintiffs' claim for tortious interference with business contracts is inadequately pled under Rule 12 and therefore dismisses that specific claim with leave to amend.

## II. BACKGROUND

Plaintiffs Matthew Capelouto and Stop Drug Homicide brought this defamation action against Defendants Glen Muse and Texas Pictures for their posting of allegedly defamatory videos on YouTube. Complaint ¶ 1. Capelouto is the president of the nonprofit, Stop Drug Homicide, which aims to raise awareness of and prevent fentanyl-related deaths. *Id*. ¶ 5, 27. He is also the former president of Drug Induced Homicide, Inc., and the organizer and founder of that corporate entity. *Id*. ¶ 6. Muse is the creative director of Texas Pictures, a media production company. *Id*. ¶ 8.

Capelouto and nonparty Theresa Almanza connected in early 2020 because both of their children had passed away from fentanyl poisoning. *Id*. ¶ 34. Capelouto created a nonprofit, Drug Induced Homicide, which shared the same name as a Facebook group Almanza created, to educate the public about the dangers of fentanyl and support legislative efforts. *Id*. ¶¶ 35–37; Motion at 5.

1    In late 2020 into 2021, journalists began reporting on Alexandra's Law, a piece of legislation
2    Capelouto and the nonprofit supported. Complaint ¶ 45. By the end of 2022, the nonprofit started
3    securing charitable donations. *Id*. ¶ 43. Alexandra's Law was ultimately passed in November 2024,
4    attracting even more media attention. *Id*. ¶ 46. Capelouto, as the sole signer, opened a bank account
5    for the nonprofit in April 2024. *Id*. ¶ 38. Capelouto claims to have received a call from Almanza in
6    May 2024 during which she accused him of stealing money raised from the nonprofit; Capelouto
7    denied this as false. *Id*. ¶¶ 48–50. Capelouto alleges another individual reviewed the bank account
8    and found no evidence that he was misappropriating funds. *Id*. ¶¶ 54–57. Nonetheless, Almanza
9    continued to spread the alleged falsities of Capelouto's theft. *Id*. ¶¶ 58–59, 64.

Muse and Texas Pictures interviewed Almanza to create a series of five YouTube videos about the nonprofit and Capelouto's alleged seizure of funds. *Id*. ¶¶ 64–66. Prior to the release of the videos, Mareka Cole reached out to Texas Pictures and informed them that the information Almanza provided about Capelouto was false. *Id*. ¶ 67. Texas Pictures nonetheless released the videos, which Plaintiffs allege contained false and defamatory statements. *Id*. ¶ 68. In particular, a video titled *The Rift*, posted on November 21, 2024, contained statements in the description alleging, for example, that Capelouto had refused to disclose financial records, failed to provide a proper account of foundation donations and expenses, and seized over $50,000 in donations intended to support Drug Induced Homicide's missions, which crippled the nonprofit's operations and outreach. *Id*. ¶¶ 78–79, 96. Texas Pictures also commented on the video "reposting all of the defamatory statements made by Almanza on the YouTube page for 'The Rift' segment." *Id*. ¶¶ 86, 97.

Capelouto alleges the false and defamatory statements "contributed to a decline in his business personal business and a decline in the fundraising efforts for Stop Drug Homicide," harmed his reputation, and "interfere[d] with his business contracts." *Id*. ¶¶ 91, 99, 100–105, 114.

### III.   LEGAL STANDARD

California law recognizes that a certain type of lawsuit—specifically, a "strategic lawsuit against public participation," or "SLAPP"—is often filed for the improper purpose of "chill[ing] the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. Proc. § 425.16(a); *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29

Cal. 4th 53, 59 (2002). To guard against these pernicious suits, the California Code of Civil Procedure provides an "anti-SLAPP" mechanism whereby a litigant can bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425.16(b)(1).

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation omitted). The movant first "must make a prima facie showing that the [] suit arises from an act in furtherance of the [movant's] rights of petition or free speech." *Id.* (citation omitted). If the movant meets the initial threshold, "the burden shifts to the [claimant] to demonstrate a probability of prevailing on the challenged claims." *Id.* (citation omitted). For the second step, "when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 837 (9th Cir. 2018). "[T]he plaintiff can properly respond merely by showing sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence to oppose contrary evidence that was never presented by defendants." *Id*. at 834.

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Only where a plaintiff fails to "nudge[] [his] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not a probability assessment, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Id*. at 679.

## IV. DISCUSSION

### A. Arises from a Protected Act

An act is protected by the anti-SLAPP statute if it fits one of the following four enumerated categories:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of constitutional right of petition or constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e). "The defendant's burden at this step 'is not a particularly demanding one.'" *Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*, 600 F. Supp. 3d 1082, 1091 (N.D. Cal. 2021) (citing *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387 (2017)).

Applying this standard, the Court finds that the videos and statements posted by Defendants constitutes a "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." *See* Cal. Code Civ. Proc. § 425.16(e)(3). First, the allegedly defamatory statements were made in a public forum—a publicly accessible YouTube channel. YouTube is an example of a website that is "accessible to the public" and therefore a "public forum[] under the anti-SLAPP statute." *Lacoste v. Keem*, No. 2:20-cv-02323-RGK-JPR, 2020 WL 5239110, at *2 (C.D. Cal. June 23, 2020).

Next, the statements were made in the public interest. "The public interest requirement must be construed broadly to encourage participation in public debate related to issues of public interest." *Id*. (citing *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007)). "California cases have generally established that the public interest requirement is met if the subject of the statement underlying the claim (1) was a person or entity in the public eye; (2) could affect large numbers of people beyond the direct participants; or (3) involved a topic of widespread public interest." *Id*. (citing *Albanese v. Menounos*, 218 Cal. App. 4th 923, 934 (2013)). Here, Capelouto is a person in the public eye due to his anti-fentanyl advocacy work, including his efforts to pass state-wide legislation, which have garnered media attention. *See* Complaint ¶¶ 43–46. Moreover, the alleged defamatory statements

relate directly to Capelouto's nonprofit work and his alleged abuses of financial power as the nonprofit's head. Both the mission of the nonprofit (preventing fentanyl-related deaths) and the alleged actions (nonprofit corruption) are issues of public interest. Accordingly, Defendants' statements are connected to issues of public interest.

### B. Sufficiency of Pleading[1]

#### 1. Defamation

The Court next proceeds to the second step of the anti-SLAPP analysis—whether the claim is properly stated under the analogous Rule 12 standard. *Planned Parenthood*, 890 F.3d at 837.[2]

"Defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage." *J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, 247 Cal. App. 4th 87, 97 (2016) (citing *Burrill v. Nair*, 217 Cal. App. 4th 357, 383 (2013)). "The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Id.*

---

[1] As an initial matter, Defendants aver that Plaintiffs' claims are facially barred by both the fair reporting privilege under Cal. Civ. Code § 47(e) and Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Motion at 16–19.

Cal. Civ. Code § 47(e) immunizes from liability any "fair and true report of . . . the publication of the matter complained of was for the public benefit." While the posted video here may have been for the public benefit, Plaintiffs allege that it was not "fair and true," so this statute does not bar the Complaint on its face.

CDA § 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Defendants argue that this shields them from liability because the posted video was content created by a third party. However, Plaintiffs counter that Defendants did more than passively host the video: they edited and titled it, added captions and voiceovers, and published a summary of it. Opposition at 14. Viewing the allegations in the light most favorable to Plaintiffs, Defendants were not mere passive hosts of the video, so the Complaint is also not barred by this statute.

[2] Defendants acknowledge that their motion challenges the legal, not factual, sufficiency of the Complaint, so the 12(b)(6) standard applies. *See* Motion at 11; Reply at 1–2. Accordingly, the Court need not consider the parties' evidentiary submissions for the purpose of determining the Motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (when reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint" (per curiam) (citation omitted)).

1  (citing *Taus v. Loftus* (2007) 40 Cal. 4th 683, 720 (2007) and *Wong v. Jing*, 189 Cal. App. 4th 1354,
2  1369 (2010)). Although a plaintiff need not plead the allegedly defamatory statement verbatim, the
3  "statement must be specifically identified, and the plaintiff must plead the substance of the
4  statement." *Class Int'l, Inc. v. Toolman Products, Inc.*, No. 8:25-cv-00010-JDE, 2025 WL 1674482,
5  at *6 (C.D. Cal. May 7, 2025) (citation omitted). "Even under the liberal federal pleading standards,
6  general allegations of the defamatory statements that do not identify the substance of what was said
7  are insufficient." *Id*.
8      Plaintiffs have met this pleading standard here and have shown to the Court's satisfaction
9  that the defamation claim has at least "minimal merit." *See Mindys Cosmetics, Inc. v. Dakar*, 611
10 F.3d 590, 598-99 (9th Cir. 2010) (holding, on an anti-SLAPP motion to strike "minimal merit
11 prong," that the claimant "need only state and substantiate a legal sufficient claim"). Plaintiffs state
12 that the five videos posted by Defendants contain defamatory statements, largely made by Almanza,
13 and the substance of which accuses Capelouto of seizing and stealing funds from the nonprofit's
14 bank account. *See, e.g.*, Complaint ¶¶ 48, 58, 65, 66. Plaintiffs also maintain that the statements are
15 categorically false. *See id*. ¶¶ 49, 53, 58, 70–71, 74. Moreover, Plaintiffs plead verbatim the alleged
16 defamatory statements made in *The Rift* video description, which state, for example, that Capelouto
17 refused to disclose financial records, failed to provide a proper account of foundation donations and
18 expenses, and seized over $50,000 in donations intended to support the nonprofit's missions, which
19 crippled its operations and outreach. *Id*. ¶¶ 78–79, 96. If false, as Plaintiffs allege, these statements
20 clearly meet the minimal pleading required to state a defamation claim.
21     Defendants also aver that Plaintiffs have not sufficiently alleged actual malice, a requirement
22 for defamation claims against public figures. *See Manzari v. Associated Newspapers Ltd.*, 830 F.3d
23 881, 891 (9th Cir. 2016). In these types of defamation cases, however, the plaintiff must show that
24 the defamatory statements "were made with knowledge of their false implications or with reckless
25 disregard of their truth." *Id*. (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).
26 Reckless disregard is measured by whether there is "sufficient evidence to permit the conclusion that
27 the defendant in fact entertained serious doubts as to the truth of his publication." *Id*. (citing *Time,*
28 *Inc. v. Pape*, 401 U.S. 279, 291–92 (1971)). "This standard ensures that publishers are not held

liable for unintentional misstatements or implications, which public figures later claim are defamatory." *Id*. Here, even assuming Capelouto is a public figure (which Plaintiffs dispute, *see* Opposition at 13), Plaintiffs have sufficiently pled actual malice. For example, Plaintiffs allege that prior to publishing the videos, Mareka Cole told Defendants that the information they were about to publish about Plaintiffs was false and that they failed to complete due diligence to verify the information. Complaint ¶¶ 67–70. Despite this warning, Defendants published the videos anyway. At the pleading stage, this is enough to state that Defendants acted with reckless disregard to the truth of the statements in the videos.

Because Plaintiffs have sufficiently plead their defamation claim, Defendants' Motion is denied as to this claim.

### 2. Tortious Interference with Business Contracts

Defendants also challenge the sufficiency of the tortious interference claim under Rule 12(b)(6). Motion at 15–16.

"A tortious interference with contractual relations claim under California law has five elements: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021) (citing *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)).

Here, the Complaint does not contain **any** allegation regarding a valid contract that exists or existed between Plaintiffs and a third party upon which the claim is based. *See, e.g.*, Complaint ¶¶ 106–114. Indeed, Plaintiffs just short of admit that they have not pled much detail at all. *See* Opposition at 14–15 ("If the Court finds the pleading lacks the specificity required to maintain an interference claim about an existing contract, Plaintiffs request leave to amend to add the minimal documentary allegations (donor agreements, vendor contracts, or other specific prospective business relationships) necessary to cure the defect."). Much more is required. The Court therefore finds that Plaintiffs have not adequately pled a claim for tortious interference with business contracts, and

accordingly grants the Motion as to this cause of action.[3]

V. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Strike is ***denied***. The Motion to Dismiss under Rule 12(b)(6) is ***granted*** as to the tortious interference claim and ***denied*** as to the defamation claim. Plaintiffs shall file an amended complaint within 20 days of this order.

Dated: December 3, 2025

_____
Hernán D. Vera
United States District Judge

---

[3] Where the Court finds that a complaint fails to state a claim, it has discretion to dismiss with or without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc). Federal Rule of Civil Procedure 15(a) provides that leave to amend should be granted "freely" unless the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs have described how they would amend their Complaint to fix the pleading defect, see Opposition at 14-15, indicating amendment may not be futile.